25-30257

## IN THE UNITED STATES COURT OF APPEALSFOR THE FIFTH CIRCUIT

---

DAVID GREEN, LADAIZYZ TILLMAN, DAKEDRA JONES
LADAVEON MCFEE,DAIJOUR MCFEE,DEBRA BAILEY ON
BEHALF OF HER MINOR CHILD J.B., DAVID RUFF
                                    Plaintiffs-Appellants

v.

CITY OF MONROE,BRFHH MONROE,L.L.C.
DOING BUSINESS AS OCHSNER LSU HEALTH MONROE
LAWRANCE MOORE,RUSSELL MCCALL
                                    Defendants-Appellees

---

On Appeal from the United States District Court for the
Western District of Louisiana, Monroe Division,
Terry Doughty, United States District Judge,

---

## BRIEF OF THE PLAINTIFFS-APPELLANTS

---

Rick Lane Candler,                  Carol D. Powell Lexing
505 S. Vienna Street                 Bar Roll #21033
Ruston, LA 71270-5036                2485 Tower Drive, Suite 6
Tele: 318- 255-1670                  Monroe, Louisiana 71201
Facsimile: 318-255-0383              Tele:318-324-0700
Facsimile: 318-329-3427              Facsimile: 318-324-0702
Email:candlerlaw@gmail.com           E:mail: legaldove2@yahoo.com

Attorneys for Appellants

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellants David Green et al certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

<u>Appellants</u>: David Green, David Ruff, Ladizya Tillman, LaDeveon McFee, Dakedra Jones, Debra Bailey on behalf of her minor child JB

<u>Counsels</u>:

| | |
|---|---|
| Carol D. Powell Lexing | Rick Lane Candler |
| Bar Roll No. 21033 | Bar Roll No.22750 |
| 2485 Tower Drive, Suite 6 | 505 S. Vienna St. |
| Monroe, LA | Ruston, Louisiana |
| 318-324-0700 | 318-255-1670 |

<u>Appellees</u>: City of Monroe, Jonathan Daniels, Lawerence Moore, Russell McCall, OCHSNER Health-LSU Monroe

<u>Counsels</u>:

| | |
|---|---|
| Brandon Creekbaum | Jay P. Adams |
| City of Monroe | Hudson, Potts&Berstein |
| Bar Roll No. | 1800 Hudson Lane Ste 300 |
| 318-329-2240 | Monroe, LA 71201 |
| P.O.Box 123 | Bar Roll # 18755 |
| Monroe, LA 71210-0123 | 318-388-4400 |

Lawerence W. Pettiette, Jr.
Pettiette Armand et al
P.O. Box 1786
Shreveport, LA 71166-1786
318-221-1800
Bar Roll # 10486

Respectfully submitted,

**/s/ Carol D. Powell-Lexing**
Carol D. Powell-Lexing
Bar Roll No. 21033
2485 Tower Drive, Suite 6
Monroe, Louisiana 7120
318-324-0700
318-324-0702 (facsimile)
legaldove2@yahoo.com

Attorney for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

The issue raised in this case may be resolved through settled principles of issue preclusion law. Therefore, Appellants do not request oral argument.

## TABLE OF CONTENTS

## Contents

CERTIFICATE OF INTERESTED PERSONS.........................................2

TABLE OF CONTENTS ...............................................................5

**TABLE OF AUTHORITIES .....................................................6**

JURISDICTIONAL STATEMENT............................................9

STATEMENT OF THE ISSUES ..............................................10

STATEMENT OF THE CASE ................................................11

SUMMARY OF THE ARGUMENTS ......................................14

ARGUMENT.........................................................................14

CONCLUSION .....................................................................32

CERTIFICATE OF COMPLIANCE.......................................33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, <u>477 U.S. 242, 252</u> (1986)............18,22

Amburgey v Corhart Refractories Corp., <u>936 F.2d 805,809</u> (5th Cir. 1991)..................................................................................16

Baenavides v Nunez,No.24-2044(5thCir. 2025..........................25 ,28

Barras v Garber, Civ. A. no:6:19-01411,<u>2020 WL5755184</u>, at *6( W.D.La. Sept. 25, 2020..........................................................30

Bailey v Ramos No.3-5018(5th Cir. 2024).....................................21

Baumeiser v Plunkett, <u>663so2d 994</u>(La 1994)................................23

Brown v Lee, <u>639so2d 897</u>(La. 1994)............................................24

*Celotex Corp. v. Catrett*, <u>477 U.S. 317, 323</u> (1986). ........................16

*Cross v. Cummings Engine Co.*, <u>993 F.2d 112, 114</u> (5th Cir. 1993).....17

Douglas v Wells Fargo Bank, 992 f3d. 362(5th Cir. 2025)............................................31

*Elsey v Sheriff of East Baton Rouge, 435 so2d (La App. 1st Cir. 1983 23*

*Groh v. Ramirez*, <u>540 U.S. 551, 562</u> (2004)........................... ..........17

*La Day v. Catalyst Technology, Inc.*, <u>302 F.3d 474, 480</u> (5th Cir. 2002). ........................................................................17

Phillips v State Dept., <u>998 so2d 1223</u>(La. App.2nd Cir.2008)............23

Ramirez v Guadarrama, <u>3 f.4ᵗʰ 129</u> (5ᵗʰ Cir. 2021)………………………28

Roberts v Benoit, <u>605 so2d 1032, 1043</u>(La. 1991)………………………22

Saucier v Katz, <u>533 U.S. 194,200</u>(2001)…………………………………25

Scott v Harris, <u>367 F3d 473</u>(5ᵗʰ Cir. 2004)……………………18,21,27

*Stedman v. Texas Rangers*, <u>179 F.3d 360, 366</u> (5ᵗʰ Cir. 1999).... …...16

TempletvHydeChev,<u>367f3d473</u>(5ᵗʰCir.2004)……………………………25

Texas v Becerra, <u>89 f.4ᵗʰ 529</u>(5ᵗʰ Cir. 2024)………………………………30

Total E&P USA Inc. v Kerr-McGhee Oil and Gas Corp., <u>719 F.3d 424,434</u>(5ᵗʰ Cir. 2013)……………………………………………20,27

*Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, <u>578 F.3d 255, 258</u> (5ᵗʰ Cir. 2009)…………………………………………17,21

Voinche v F.B.I., <u>999 F2d 962,963</u>(1993)………………………,,16

## Statutes

<u>42 U.S.C. Section 1395</u>……………………………………………30

**<u>42 U.S.C. Section 1983</u>. 1988……………………………………14**

La.R.S. 28:63C (1)(b)………………………………………………29

**La. R.S. 40:1231.1………………………………………………30**

**RULES**

**Fed.R.Civ.P. 56 (a)**…………………………………. …….....………………….16

**CivilCode Articles 2315, 2316, 2317, 2320**……………………….. 14,16

## JURISDICTIONAL  STATEMENT

Appellant invokes jurisdiction of this Court under 28 U.S.C. § 1291, as an appeal from a final ruling of the district court.

## STATEMENT OF THE ISSUES

1.     The District Court erroneously found that there was no genuine issue of material fact that the Excessive Force used by Officer Daniel on decedent Harris caused his death.

2.     The District Court erroneously found that the bodycam footage "clearly" shows that Daniel's never placed his knee on decedent Harris neck which contributed to his death.

3.     The District Court erroneously found that Daniel decision to take decedent Harris to Ouachita Correctional Center rather than admitting him at the hospital he was already at caused and contributed to his death.

4.     The District Court erroneously granted reconsideration to Defendants Moore and McCall because Green failed to rebut Moore and McCall affidavit stating they did not place their knee on decedent Harris neck.

5.     The District Cour erroneously found that there was no dispute that Moore and McCall did not contributed to and cause decedent Harris death in light of the video footage.

6.     The District Court erroneously found that OCHSNER's did

not violate the Emergency Medical Treatment and Labor Act.

.

## STATEMENT OF THE CASE

1.     Course of Proceedings in the Court Below:

On April 3, 2021, David Harris was    found walking down the

middle of the street holding up traffic. Officer Jonathan Daniel detained

Mr. Harris, who had been advised, by a family member at the scene

that told him Mr. Harris suffered from mental illness. Officer Daniel

then drove Mr. Harris, in his police car, to Costner LSU Health

Hospital, where a stretcher was waiting for him.  Once they arrived at

the hospital Mr. Harris refused to get out of the patrol car.  Two police

Officers, Lawrence Moore and Russell McCall, arrived to assist Officer

Daniel get Mr. Harris out of the patrol car.  Mr. Harris was forcibly

removed from the police car, but continued to resist being put on the

stretcher.  Mr. Harris was then put on the ground where he was held by

the officers while waiting for additional backup.  Mr. Harris had been

handcuffed, held on the ground, tasered multiple times by Daniels and

the other officers; while all the time he (Mr. Harris) was complaining about the pressure on his neck by the defendant officers. The hospital staff were present with a stretcher to render aid to Mr. Harris, however Officer Daniels advised the other officers and the hospital staff that he was taking him to OCC. At 1:35 p.m. transported Mr. Harris Ouachita Correctional Center, where the nurse at OCC observed him to be in distress who then took his pulse which was faint and attempted to save his life, but shortly after he died. Mr. Harris was never afforded medical attention at Ochsner LSU Health Hospital, even though, he was taken there for medical attention, as it was apparent that he was having problems and needing medical help. This lawsuit was filed.

2. **STATEMENT OF THE FACTS**

On April 3, 2021, David Harris was    found walking down the middle of the street holding up traffic. Officer Jonathan Daniel detained Mr. Harris, who had been advised, by a family member at the scene that told him Mr. Harris suffered from mental illness. Officer Daniel then drove Mr. Harris, in his police car, to Costner LSU Health Hospital, where a stretcher was waiting for him. Once they arrived at the

hospital Mr. Harris refused to get out of the patrol car. Two police Officers, Lawrence Moore and Russell McCall, arrived to assist Officer Daniel get Mr. Harris out of the patrol car. Mr. Harris was forcibly removed from the police car, but continued to resist being put on the stretcher. Mr. Harris was then put on the ground where he was held by the officers while waiting for additional backup. Mr. Harris had been handcuffed, held on the ground, tasered multiple times by Daniels and the other officers; while all the time he (Mr. Harris) was complaining about the pressure on his neck by the defendant officers. The hospital staff were present with a stretcher to render aid to Mr. Harris, however Officer Daniels advised the other officers and the hospital staff that he was taking him to OCC. At 1:35 p.m. transported Mr. Harris Ouachita Correctional Center, where the nurse at OCC observed him to be in distress who then took his pulse which was faint and attempted to save his life, but shortly after he died. Mr. Harris was never afforded medical attention at Ochsner LSU Health Hospital, even though, he was taken there for medical attention, as it was apparent that he was having problems and needing medical help. This lawsuit was filed on April 2, 2022 and amended on April4, 2022. ROA.24, and ROA.43.

**3. SUMMARY OF THE ARGUMENT** **Appellant produced Summary Judgment evidence to show that the Appellee /Defendant City of Monroe is liable under state law vicarious liability claims based on Officer Daniel's excessive force and failure to provide "appropriate" medical care to decedent David Harris thus causing and contributing to his death. La Civil Code 2315,2316,2317 and 2320.  Officers Lawerence Moore and Russell McCall are liable under 42 U.S.C. section 1983,1988 and La. C.C. article 2315, 2316, 2317. Assault and Battery. BRFHA Monroe, LLCd/b/a OSCHNER LSU Health-Monroe are liable under La. C.C. Article 2315, 2316 and the Emergency Medical Treatment and Labor Act.**

2.  **Questions of facts for the Jury exist and notissues of law for the court on Summary Judgment.**

## ARGUMENT

1.    *Issue no. One: The district court erred in granting summary judgment against Appellants on the grounds that there was no genuine issue of material fact that the Excessive Force used by Officer Daniel on decedent Harris caused his death.*

2.     *Issue no. 2: The District Court erred in finding that the bodycam footage "clearly" shows that Daniel's never placed his knee on decedent Harris neck which contributed to his death.*

3.     *Issue no. 3: The District Court erred in finding that Daniel decision to take decedent Harris to Ouachita Correctional Center rather than admitting him at the hospital he was already at caused and contributed to his death.*

4.     *Issue no.4: The District Court erred in granting reconsideration to Defendants Moore and McCall because Green failed to rebut Moore and McCall affidavit stating they did not place their knee on decedent Harris neck.*

5.     *Issue no. 5: The District Cour erred in finding that there was no dispute that Moore and McCall did not contributed to and cause decedent Harris death in light of the video footage.*

6.     *Issue no. 6: The District Court erred in finding that OCHSNER's did not violate the Emergency Medical Treatment and Labor Act.*

3.     Standard of Review:

"Summary judgment is reviewed *de novo,* under the same standards the district court applies to determine whether summary judgment is appropriate. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 809 (5th Cir. 1991)" *Voinche v. F.B.I*, 999 F.2d 962, 963 (5th Cir. 1993).

4.     Arguments and Authorities:

Summary judgment is only appropriate when, considering all the allegations in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing inferences in the light most favorable to the non-moving party, there remains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a).

The movant bears the burden of demonstrating that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the record, taken as a whole, could not lead a rational trier of fact to find for the non-movant, there is no genuine issue for trial. *Stedman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). A factual

dispute is deemed genuine if a reasonable juror could return a verdict for the non-movant and a fact is considered material if it might affect the outcome of the lawsuit under governing substantive law. *Cross v. Cummings Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).

Where the summary judgment record supports competing versions of events, it is the factfinder that must decide which side has the greater weight of the evidence. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 480 (5th Cir. 2002).

The evidence of the nonmovant is to be believed, with all justifiable inferences and all reasonable doubts resolved in its favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

In deciding a motion for summary judgment, a judge must ask not whether he or she thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the nonmovant based on the evidence presented. The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably

find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, <u>477 U.S. 242,</u> <u>252</u> (1986).

In the context of video evidence, the U.S. Supreme Court held in *Scott v Harris, <u>550 U. S. 372</u> (2007),* that video footage can conclusively refute a party's version of events. However, where the footage is ambiguous, incomplete, or contains material gaps, the fifth circuit has held that Summary Judgment is inappropriate.

1. **<u>The District Court erred in granting Summary Judgment on the grounds that there was no genuine issue of material fact that the excessive force used by Officer Daniel on decedent Harris contributed and caused his death. </u>**
2. **<u>The District Court erred in finding that the bodycam footage "clearly" shows that Daniel's never placed his knee on decedent Harris neck which contributed and/or caused his death. </u>**

**Appellants incorporates both arguments into Issues one and two.**

*The District Court is correct in his assessment of the video in defendants Moore and McCall's Memorandum Ruling dated March 13, 2025.* <u>ROA. 1008</u>, <u>ROA.1009</u>. This same assessment should be applied against the city of Monroe and officer Daniel showing that there are genuine issues of material fact as it relates to Daniels use of

excessive force contributing to and causing the death of the decedent Harris. The court correctly opined "that the video is not as revealing as they make it out to be. ROA. 1008. The court opined that the only footage offered to the court is from officer Daniels camera. And the incident lasted around 12 minutes ---- from the moment Harris was yanked out of the vehicle to the moment he was carried back into it. Officers Moore and McCall claim that the video "clearly fails to demonstrate a drop--- kick or knee to the back of Harris's neck. Yet Harris's entire upper body including his neck ----- and one of the officers were entirely out of the camera's view for five out of those twelve minutes. Not were these just any five minutes. Right before, officer Daniels instructed officer Moore and McCall "to hold his head." Harris top half and either officers Moore or McCall then exited the camera's view for the next five minutes while the other officer placed their knee on Harris lower end and to restrain him. When Harris appeared on camera again minutes later, blood is splashed across the cement where his face presumably laid. And Harris conditions seemingly worsened during those five minutes to the point that he could no longer stand and had to be carried by approximately four or five officers back into the

patrol car. What happened throughout those five minutes remains unknown. Again, the court must draw all permissible inferences in favor of the non moving party. Total E&P USA INC., <u>719 F. 3d at 434</u>. The court went on to opine "that although what happened in those five minutes is not clear, what is clear is that a reasonable jury viewing that footage can return a verdict favoring Green." <u>ROA .1009</u>.

The city and Daniels claimed that the body Cam footage clearly shows that Daniel never placed his knees on Harris neck; therefore, he did not contribute or cause decedent Harris death. Contrary, to the City and Daniel's mischaracterization of the video footage Officer Daniel Excessive force exercised on decedent Harris cannot be ignored in light of Daniel's own video footage. In addition, plaintiff's expert Dr. William Anderson, a forensic pathologist performed the autopsy on decedent Harris testified at his deposition: "Well, he had multiple other injuries. But yeah. The cause of death, what killed this guy was the injury to the upper spinal cord, which is going to affect all his motor functions, respiratory, cardiac functions and so forth and results generally in a very rapid downhill collapse of this individual." <u>ROA .802</u> Dr. Anderson further opined that the decedent Harris had blunt force trauma,

head injuries ,multiple abrasions to his forehead and cheek, to his thorax and extremities, multiple areas of abrasions in its upper and lower extremities recent contusion injuries posterior ratio and right scapular region and that the complications of blunt force trauma, posterior neck with involvement of cervical spine cord caused his death. ROA. 1004 and ROA. 922. The video confirms Daniel consistently grabbing Harris by the neck; notwithstanding, the gap in the video are material because it shows contact which makes him liable under LA. Civil Code article 2315.1, 23.2 and 2316.

The Supreme Court in *Scott v. Harris* held: When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. 550 U. S. at 380. However, the inverse also applies where the video does not blatantly contradict the plaintiffs account particularly due to lapses or gaps  courts must adopt the non- movants version and allow the claim to proceed to trial. *In Bailey v. Ramos, No. 23-50185(5th Cir. 2024), The 5th circuit re*iterated that thus we assign greater weight, even at the summary judgment stage, to the facts

evident from video recordings taken at the scene. In as much as the video evidence is inconclusive, we apply the traditional summary judgment standard. In this case, the body Cam video contains a five to ten minute lapse during which the officers use of force is not recorded. ROA.1008, ROA.1009(Notice of Manual Attachment Exhibits A(1)&2 bodycam footage) ROA. 794   The defendant Daniel denies placing a knee under the decedent Harris neck, but the denial is unsupported by objective evidence during the crucial time frame. A reasonable jury could infer

excessive force occurred during that lapse, creating a tribal issue of fact. Those lapse/gaps in the video which do not show the incident could very well prove that Harris would not have died but for Daniel's conduct and that Daniel's conduct was a "substantial factor" in brining about Harris death. *Roberts v. Benoit, 605 so2d 1032, 1042 (La. 1991). Th*erefore, genuine issue of material fact exist. One hurdle that none of the defendants can get over is that the video shows that Harris did not have the injuries opined by Dr. Anderson as a cause of his death prior to his encounter with the police officers.

The actions of Daniel within the course and scope of his employment places the city on the hook for being held liable pursuant to vicarious liability. "An employer is liable for a tort committed by it's employee when the employee is acting within the course and scope of his employment. *Baumeister v. Plunkett, 663 so2d 994 (La. 1994).* The city concedes that Daniel's was an employee of the City of Monroe working within the course and scope of Daniel's employment during the time excessive force was used on Harris which led to his death.

3. **The District Court erred in finding that Daniel's decision to take Harris to Ouachita Correctional Center rather than admitting him in the hospital he was already at caused and contributed to his death.**

Under Louisiana law police officers have a duty to provide reasonable medical care to individuals in their custody when the need for such care is shown by the person's mental or physical condition. *Phillips v. State, Dept. of Pub Safety & Corrections, 978 so2d 1223 (La. App. 2nd Cir. 2008)* An officers actions are evaluated based on the information available to them at the time and judged against the standard of reasonableness. *Elsey v Sheriff of Par of East Baton Rouge, 435 so. 2nd*

*1104 (La. App.1st Cir. 1983*). This standard requires logic, reasoning and

employment of policy decisions to determine whether liability should be

imposed under the particular factual circumstances presented. *Brown v*

*Lee 639 so. 2nd 897 (La 1994).* Daniel's action were unreasonable as

shown by the video body cam footage ROA. 794 (Notice of Manual

attachment). Daniel transported decedent Harris to Ochsner hospital

after being advised by a family members Katrina Ruff( Harris

Acquaintance and Harris Sister that decedent suffers from mental

illness and to take him to the hospital for treatment. ROA.49.  What

transpired later on as reflected in the video defies logic and reasoning

showing Daniel's, McCall and Moore engaging in excessive force actions

against the defendant which rendered him limp , unresponsive,

grunting and gurling because of the Daniel, Moore and McCall actions

four to five officers picked up Harris at Daniel's instruction and place

him back into Daniels's patrol car as medical staff  from the hospital on

standby look on with their restraint stretcher ready to take Harris

inside the hospital. Daniel's advised them "they were going to OCC and

not to worry about admitting him in the hospital." ROA.794 (Video)

The time it took Daniel's to drive Harris to OCC was crucial time that

could have prevented his death if he was taken inside OSCHER hospital which is a material fact provided by the video that should be determined by a jury, unresolved by the video that must be weigh by a jury (conflicting evidence) and not a Judge. *Benavides v. Nunez No. 24-20445(5th Cir. 2025).*

**4. The District Court erred in granting rweconsideration to defendants Moore and McCall because Green failed to rebut Moor and McCall's affidavits stating they did not place their knee on decedent Harris neck**

**5. The District Court erred in finding that there was no dispute that Moore and McCall did not contributed to and caused decedent Harris death in light of the video footage.**

Appellants incorporate their argument in No. 4 and 5 argument.

A motion for reconsideration "calls into question the correctness of a judgment." *Templet v. Hydro Chem, Inc., 367 f3d 473(5th Cir. 2004)* . A motion for reconsideration is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered arranged before entry of *Judgment. Templet, 367*. A reconsideration of a decision is an extraordinary remedy that should be used sparingly. *Templet, 367.*

In the case subjudice the Defendants Moore and McCall  have asked the court to reconsider it's memorandum ruling of March 13, 2025, which denied their Motion for Summary Judgment as it relates to Plaintiffs' section 1983 wrongful death claims and Plaintiffs' Louisiana Civil Code article 2315 claims.  Moore and McCall allege that Plaintiff Green never rebutted or contradicted their self- serving affidavits establishing neither Moore nor McCall placed a knee on the back of Harris' Neck when they assisted in restraining Harris on April 3, 2021. ROA.1015. We respectfully submit that the District Court did a thorough analysis in it's Memorandum Ruling of March 13, 2025, by opining "that the video is not revealing as they make it out to be."  In essence the District Court carefully pointed out that their was a gap in the video for five minutes. "Officers Moore and McCall claim that the video clearly fails to demonstrate a dropkick or knee to the back of Harris's neck. Yet, Harris entire upper body ------ including his neck ---- and one of the officers were entirely out of the camera for five out of those 12 minutes. Nor were these just any five minutes. Right before, officer Daniels instructed officer Moore and McCall "to hold his head."

Harris top half and either officers Moore or McCall then existed the camera view for the next five minutes while the other placed their knee on Harris lower end to restrain him. When Harris appeared on camera again minutes later, blood is splashed across the cement where his face presumably laid. And Harris condition seemingly worsened during those 5 minutes to the point that he could no longer stand and had to be carried by approximately four or five officers back into the patrol car." "What happened throughout those five minutes remained unknown." Again, the court must draw all permissible inference in favor of the nonmoving party." *Total E & P USA Inc., 719 F. 3d at 434*. *ROA. 1008*, *ROA.1009*.

As previously argued in this case the body-camera video contains a five to ten minute gap/lapse during which the officers use of force is not recorded. The defendant Officers Moore and McCall affidavits denying placing a knee on the decedent n*eck is irrelevant* because this denial is unsupported by objective evidence during the crucial time frame. *Scott v Harris, 550 U.S. at380*. Reiterating the ruling of the District Court " Although what happened in those five minutes is not clear. What is

clear is that a reasonable jury viewing that footage could return a verdict favoring Green." ROA. 1009.

In *Benavides, sued* Deputy Nunez under 42 U.S.C. section 1983 alleging excessive force. Deputy invoked qualified immunity and moved for summary judgment. The District Court denied the motion. The court applied the two-part qualified immunity analysis and found a genuine dispute of material fact concerning the first prong of the analysis, namely, whether Benavides was shot intentionally or accidentally. The District Court found that the body camera footage combined with other relevant evidence, presents a dispute as to objective ---- reasonableness, because a jury could, after evaluating and weighing the evidence could conclude that the facts support either party's version of events. As so in this case makes Moore and McCall self -serving affidavits moot. The Fifth Circuit has held that self-serving affidavits, particularly when uncorroborated, are insufficient to support summary judgment when objective evidence creates disputes. *Ramirez versus Guadarrama, 3 F. 4th 129, (5th Cir. 2021). The credibility of the affiant is undermined* when objective evidence is lacking or contradicted even more so when video evidence is missing

altogether during key moments. Therefore, no manifest factual error was made and the Court's original ruling of March 13, 2025, as it relates to this issue should be reinstated.

### 6. The District Court erred in finding that OCHSNER's did not violate the Emergency Medical Treatment and Labor Act.

A person can potentially secure a claim against a hospital for the death of someone if the hospital failed to treat them, and as this could be considered medical negligence and result in a wrongful death lawsuit, provided that the lack of treatment was a direct cause of the person's death and the hospital breached it's duty of care to the patient. According to Louisiana R.S. 28: 63 C (1) (b) states that any public or private General Hospital to which a patient has been transported pursuant to an order of protective custody or an emergency certificate or for the purpose of examination for an emergency commitment certificate shall not be held civilly liable are subject to criminal prosecution for damage or injury to the patient arising from the intention or treatment of the patient if the public or private General Hospital personnel have use reasonable care and diligence and

their best judgment and application of their skills under similar circumstances in the same or similar community of locality unless the damage or injury was caused by willful or wanton negligence or gross misconduct. The fact that the decedent Harris was not seen at all for the apparent physical medical issues he was suffering, the hospital medical staff was negligent and not making sure he was at least given a medical screening as required by the Emergency Medical Treatment and labor Act 42 U.S.C. section 1395 sanctioned before allowing him to be transferred to OCC with officer Daniel.  OSCHNER  not only lacked a standard of care toward Harris pursuant to La. R.S. 40:1231.1 but breached the duty of care which occurred when they improperly handled Mr. Harris and failed to diagnose the serious condition, which ultimately resulted in his death, only minutes later. EMTALA, 42 U.S.C. section 1395 was enacted to combat the practice of patient dumping, the practice of turning away indigent patients without evaluation or treatment. *Texas v Becerra 89 F. 4th 529, (5th Cir. 2024). The mere fact that OSCHNER* did not intervene can be considered patient dumping thereby breaching their duty to at least give a medical screening  prior to Daniels transferring decedent Harris to

OCC. Their lack of intervention under the standard  analysis duty to at least screen decedent Harris after witnessing the excessive force used by the officer rendering decedent Harris nonresponsive and stating he could not breath, blood on the cement prior to him being transferred to OCC falls below the standard of care required of a  hospital pursuant to the Emergency Medical Treatment and Labor Act. Defendant OSCHNER like his counterparts defendants offer a deflection citing Dr. Anderson opinion regarding Harris cause of death to relieve them of liability.  From Harris injuries inflicted by the officers pursuant to Douglas v. Wells Fargo Bank 992 f.3d 362 (5th Cir. 2024) the fifth circuit has recognized when a claim  is not raised in the complaint that the District Court can treat a new claim raised in summary Judgment as a request for leave to amend because it is not properly before the court. Douglas, id the District Court held that a new claim raised an assignment judgment could be considered as a request for leave to amend. Genuine issues of material facts exist as to whether under EMTLA OSCHNER medical hospital lack of care

contributed to Harris death. Alternatively remand for leave to allow Appellants to amend their complaint.

## <u>CONCLUSION</u>

Appellant prays that the Court reverse the judgment below and remand for further proceedings consistent with the Court's opinion.

Respectfully Submitted:

**/s/ Carol Powell-Lexing**
Carol D. Powell-Lexing
Bar Roll No. 21033
2485 Tower Drive, Suite 6
Monroe, Louisiana 71201
318-324-0700
318-324-0702 (facsimile)
legaldove2@yahoo.com

Attorney for Appellant
<u>CERTIFICATE OF SERVICE</u>

I have served a true copy of this brief has been served on all counsels of record, via the electronic filing system, on this 26th day of August 2025.

**/s/ Carol Powell-Lexing**
Carol Powell-Lexing

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface and type volume limitations of Fed. R. App. P. 32 (a) and Local Rule 32.2, in that it contains 5,155 words in MS Word, 14-point New Century Schoolbook font.

/s/ **Carol Powell-Lexing**
Carol D. Powell-Lexing