No. 25-30257

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DAVID GREEN; LADAIZYA TILLMAN; DAKEDRA JONES; LADAVEON MCFEE; DAIJOUR MCFEE; DEBRA BAILEY, ON BEHALF OF HER MINOR CHILD J.B.; DAVID RUFF,

*Plaintiffs-Appellants*

V.

CITY OF MONROE; BRFHH MONROE, L.L.C., DOING BUSINESS AS OCHSNER LSU HEALTH-MONROE; LAWRANCE MOORE; RUSSELL MCCALL,

*Defendants-Appellees*

Appeal from the United States District Court for the
Western District of Louisiana, Monroe Division
Case No. 3:22-CV-00884

## CITY OF MONROE'S OPENING BRIEF
## DEFENDANT-APPELLEE

Brandon W. Creekbaum, La. No. 33791
*Lead Counsel*
CITY OF MONROE, LEGAL DEPARTMENT
400 Lea Joyner Memorial Expressway
Monroe, Louisiana 71201
Tel: (318) 329-2240
Brandon.Creekbaum@ci.monroe.la.us
*Attorney for the City of Monroe*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant — as a "governmental" party — need not furnish a certificate of interested persons.

*/s/ Brandon W. Creekbaum*
Attorney of Record for Defendant-Appellee

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument would not significantly aid the decisional process. *See* Fed. R. App. Proc. 34(a)(2)(C); 5th Cir. R. 28.2.3. The facts are straightforward, and the legal principles are well settled. This case can be affirmed on the Court's summary calendar, without oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS......................................i

STATEMENT REGARDING ORAL ARGUMENT ............................ii

TABLE OF CONTENTS ............................................................ iii

TABLE OF AUTHORITIES ......................................................... v

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................... 1

INTRODUCTION ................................................................... 2

STATEMENT OF THE CASE....................................................... 3

  A. FACTUAL BACKGROUND ............................................... 3

  B. PROCEDURAL HISTORY ............................................... 7

STANDARD OF REVIEW ........................................................ 10

SUMMARY OF THE ARGUMENT ............................................. 11

ARGUMENT......................................................................... 12

  I. OFFICER DANIEL DID NOT USE ANY FORCE THAT CAUSED HARRIS'
     DEATH. .................................................................... 14

    A. OFFICER DANIEL DID NOT INJURE HARRIS' NECK. ..................... 15

    B. "GAPS" IN THE VIDEO FOOTAGE DO NOT CREATE AN ISSUE OF
      FACT.. .................................................................... 16

      1. OFFICER DANIEL'S ACCOUNT AND THE FOOTAGE ALIGN. ........ 17

      2. SPECULATION ABOUT WHEN HARRIS' NECK WAS INJURED DOES
        NOT CREATE AN ISSUE OF FACT. .................................... 19

    C. NO OTHER USES OF FORCE INJURED HARRIS' NECK. .................. 20

    D. APPELLANTS' CASES ARE IRRELEVANT....................................21

II. OFFICER DANIEL'S DECISION TO TRANSPORT HARRIS TO OUACHITA CORRECTIONAL CENTER DID NOT CAUSE HARRIS' DEATH..............22

III. IF THIS COURT REVERSES, THIS COURT SHOULD REMAND WITH INSTRUCTIONS TO ADDRESS THE CITY'S ALTERNATIVE ARGUMENTS FOR SUMMARY JUDGMENT. .............................................................24

CONCLUSION...........................................................................25

CERTIFICATE OF SERVICE ......................................................26

CERTIFICATE OF COMPLIANCE.............................................27

## TABLE OF AUTHORITIES

## CASES

*Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021) ...............18

*Arshad v. Congemi*, 164 So. 3d 193 (La. App. 5 Cir. 2014) ...................25

*Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008).....................13

*Benavides v. Nunez*, 144 F.4th 751 (5th Cir. 2025) ...............................23

*Bourne v. Gunnels*, 921 F.3d 484 (5th Cir. 2019) .............................18, 19

*Brown v. Lee*, 639 So. 2d 897 (La. App. 5 Cir. 1994) ............................25

*Dabog v. Deris*, 625 So. 2d 492 (La. 1993) .............................................13

*Giammanchere v. Ernst*, 742 So. 2d 572 (La. App. 4 Cir. 1999).............26

*Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743 (5th Cir. 2023) ......13

*Jenkins v. Arbors on Lake Apartments*, 2021-01662 (La. 3/22/22),
     334 So. 3d 746...................................................................................24

*Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95),
     650 So. 2d 757...................................................................................15

*Martinez v. City of Rosenberg*, 123 F.4th 285 (5th Cir. 2024) ...............17

*Morris v. Orleans Par. Sch. Bd.*, 553 So.2d 427 (La. 1989)...................13

*Niang v. Dryades YMCA Sch. of Com., Inc.*, 2019-0425
     (La. App. 4 Cir. 12/4/19), 286 So. 3d 506 ........................................24

*Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752 (5th Cir. 2011) .....10

*Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01), 782 So. 2d 606........14

*Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228 ..................24

*Ramirez v. Guadarrama*, 3 F.4th 129 (5th Cir. 2021)............................23

*Roberts v. Benoit*, 605 So.2d 1032 (La.1991).........................................14

*Scott v. City of Shreveport*, 169 So. 3d 770 (La. App. 2 Cir. 2015) .........25

*Scott v. Harris*, 550 U.S. 372 (2007)......................................................18

*Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*,

627 F.3d 134 (5th Cir. 2010) ................................................. 10

*Taylor v. Giddens*, 618 So. 2d 834 (La. 1993) ......................... 13

*Westchester Fire Ins. Co. v. Haspel–Kansas Inv. P'ship,*
   342 F.3d 416 (5th Cir. 2003) ............................................. 14

*Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) ....................... 10

*Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1428 (2025) ........................................... 27

## STATUTES

La. C.C. art. 2315.1 ........................................................... 12
La. C.C. art. 2315.2 ........................................................... 12
La. C.C. art. 2320 ............................................................. 15

## RULES

Fed. R. Civ. P. 56 .............................................................. 10

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The relevant issues presented for review are:

1. Whether the district court properly granted summary judgment to the City on Appellants' state-law excessive force claim where Appellants cannot show that Officer Daniel's use of force caused the decedent's death?

2. Whether the district court properly granted summary judgment to the City on Appellants' state-law failure to provide medical care claim where Appellants did not present any medical evidence that the decedent would have or could have survived with different medical treatment?

## INTRODUCTION

Monroe Police Department Officer Jonathon Daniel took David Harris to the hospital for suspected phencyclidine ("PCP") use rather than arrest Harris for minor criminal violations. When they arrived at the hospital, Harris refused to cooperate, became combative, and struggled with three officers for almost seven minutes while they worked to restrain him. When the officers finally subdued Harris, Officer Daniel arrested Harris and took him to jail, both for the safety of hospital personnel and to ensure that Harris could be examined in a secure environment. Unfortunately, Harris passed away shortly after arriving at the jail.

Appellants sued the City of Monroe, claiming that Officer Daniel caused Harris' death through excessive force and failure to provide medical care. To support those theories, Appellants pointed exclusively to their expert's opinion that a "hard knee to the neck" was the cause of Harris' death. Officer Daniel, however, swore that he never struck Harris' neck, nothing in Officer Daniel's body camera footage shows Officer Daniel striking Harris' neck, and Appellants never pointed to any evidence – other than their own conjecture – that Officer Daniel struck

2

Harris' neck. On the denial-of-medical-care claim, Appellants introduced
no medical evidence that Officer Daniel's decision to take Harris to jail
caused or contributed to his death; Appellants relied solely on their own
speculation that the outcome may have been different if Harris had
stayed at the hospital. Because Appellants' conclusions, unsupported by
any evidence, were insufficient to raise a triable issue of fact, the district
court correctly granted summary judgment. This Court should affirm.

## STATEMENT OF THE CASE

Although the City moved for summary judgment on alternative
grounds, the district court granted summary judgment solely because
Appellants could not establish that Officer Daniel caused Harris' death.
For the sake of brevity, the City confines its statement of the case to only
those matters necessary to review the district court's ruling.

### A. FACTUAL BACKGROUND[1]

On April 3, 2021, Officer Daniel observed Harris walking in the
middle of a municipal roadway waving his arms, hollering at cars, and
impending the flow of traffic. ROA.849-850, 857-860; [C-1, 00:12-00:25];

---

[1] The entire encounter between Harris and Officer Daniel was recorded on Officer
Daniel's body camera. The footage, which consists of three videos, was submitted as
a manual attachment in the district court and identified as Exhibits C-1, C-2, and C-
3. ROA.856. The City uses the same exhibit designations here.

[C-2, 34:55-35:16]. Officer Daniel got out his unit and detained Harris, who appeared disoriented or intoxicated. [C-1, 00:25-1:00]. After Officer Daniel placed Harris in handcuffs, a passing motorist, Katrina Ruff (Harris' acquaintance), informed Officer Daniel that Harris frequently used PCP and was likely high. [C-1, 1:05-2:13]; [C-2, 35:30]. She also informed Officer Daniel that she had observed Harris running in the roadway and interfering with traffic. [C-1, 6:38]; ROA.858-860. Officer Daniel concluded that Harris was high on PCP and that he had probable cause to arrest Harris for violating municipal laws. ROA.850.

Rather than arrest Harris, Officer Daniel conducted a "critical intervention" and took Harris to a local hospital, LSU-Ochsner ("Ochsner"), to get checked out. ROA.849-851, 858-859; [C-1, 7:27-7:33, 8:50-9:10]. When they arrived at Ochsner, Harris became erratic, started arguing with Officer Daniel, slipped his handcuffs to the front, and started violently kicking the interior of the patrol unit. ROA.851, 858-860; [C-1, 14:40-15:50]. Harris' actions left Officer Daniel with no choice but to try to prevent Harris from injuring himself or damaging the car. ROA.851. But when Officer Daniel opened the vehicle door, Harris jerked

away, ignored orders to stay back, and contrary to those orders, began moving toward Officer Daniel. ROA.851, 858-859; [C-1, 15:50-16:23].

When Officer Daniel grabbed Harris to remove him from the vehicle, Harris latched onto the doorway and refused to let go. ROA.851, 858-859; [C-1, 16:24-16:50]. Officer Daniel tried to pry Harris off the doorway for more than twenty seconds but failed. [C-1, 16:24-16:50]; [C-2, 00:01-00:25]. Eventually, two LSU Officers, Lawrance Moore and Russell McCall, arrived and helped Officer Daniel get Harris to the ground. ROA.851, 858-859; [C-2, 00:26-0:40]. Over the next several minutes, all three officers repeatedly tried to secure Harris and bring him to a waiting stretcher. ROA.851-852; [C-2, 00:47-3:45]. Harris, however, continued to resist. [C-2, 00:47-3:45]. Although the officers tried to use physical force and short taser bursts to gain compliance, none of their efforts were successful. ROA.851-852; [C-2, 00:47-3:45].

When it became clear that Harris was not going to comply with the officers' orders, Officer Daniel determined it was no longer safe to admit Harris to Ochsner. ROA.852. Officer Daniel then focused on securing Harris so that he could be arrested and transported to Ouachita Correctional Center, which also had medical staff on site. ROA.852. All

5

three officers worked to resecure Harris' handcuffs behind his back, but Harris continued to resist, ignored another taser stun, and had to be held down so a nurse could remove Harris' clothing, which had become tangled in the handcuffs. [C-2, 3:47-8:35]. Harris continued to resist even after Officer Daniel's backup arrived and provided additional assistance. [C-2, 8:35-10:20]. After almost seven minutes of struggling, Officer Daniel was finally able to resecure Harris' handcuffs behind Harris' back. [C-2, 10:15-10:25]

During the entire time the officers worked to resecure Harris' handcuffs, Officer Daniel was positioned in front of Harris (not behind him or near Harris' neck or spine). [C-2, 3:47-10:20]. Officer Daniel also never placed his knee on the back of Harris' neck, never drop-kicked or punched Harris' neck, and never placed any significant force on the back of Harris' neck during the struggle. ROA. 852. The footage shows that Officer Daniel did not commit any act, nor was he even positioned to commit any act, that injured Harris' neck.

After Harris was resecured, Harris was placed in the back of Officer Daniel's patrol unit. ROA.852; [C-2, 12:15-13:50]. Officer Daniel then drove Harris straight to Ouachita Correctional Center, which was about

three minutes away. [C-2, 13:50-17:05]. Ouachita Correctional Center medical staff immediately checked on Harris when he was brought into the facility, but Harris' condition deteriorated. [C-2, 17:10-21:35].

Although medical staff attempted life-saving measures, Harris passed away. ROA.858-860; [C-2, 24:20-39:20]. According to Appellants' medical expert, Dr. William Anderson, Harris' cause of death was "complication of blunt force trauma, posterior neck with involvement of cervical spinal cord." ROA.886, 894-897. Dr. Anderson testified that the injury was caused by significant force coming down on the back of Harris' neck, although Dr. Anderson offered no opinion on who caused the injury or when the injury occurred. ROA.899-890, 904. A post-death toxicology report showed that Harris had PCP, methamphetamine, and alcohol in his system at the time of his death. ROA.906-909.

## B. PROCEDURAL HISTORY

Appellants filed this suit against the City of Monroe and Officer Daniel, asserting claims under federal and state law. ROA.43-63. The City and Officer Daniel moved to dismiss all claims, except for the state-law wrongful death and survival action claims against the City alleging vicarious liability for Officer Daniel's actions. ROA.141-200. The

magistrate judge recommended dismissal of the federal law claims against the City and all claims against Officer Daniel. ROA.347-375. Over Appellants' objections, ROA.405-412, the district court adopted the magistrate judge's recommendations and entered judgment dismissing most of Appellants' claims, ROA.413. The only remaining claims after preliminary motion practice were Appellants' state-law, vicarious liability claims against the City.

After discovery, the City moved for summary judgment.[2] ROA.811-909. Relevant here, the City argued that Appellants could not establish that Officer Daniel caused Harris' death. ROA.844-846. The City pointed out that while Appellants' medical expert, Dr. Anderson, testified that the blunt force injuries to Harris' neck were caused by a "significant" blow to the back of the neck, such as a drop-kick or knee to the neck, there was no evidence that Officer Daniel committed that act. ROA.845, 852, 898-903. The City also pointed out that Appellants had no evidence – medical

---

[2] The City moved for summary judgment on three alternative grounds. First, the City argued that Officer Daniel's uses of force and decision to transport Harris to Ouachita Correctional Center were reasonable under the circumstances. ROA.832-843. Second, the City asserted that, notwithstanding the underlying conduct, Appellants could not establish that Officer Daniel caused Harris' death. ROA.844-846. And third, the City invoked statutory immunities precluding or limiting its liability. ROA.846-848. The district court only addressed the second argument.

or otherwise – to establish that any alleged delay or denial of medical care caused Harris' death. ROA.846. Appellants filed an opposition, ROA.982-1001, but Appellants did not address many of the City's arguments or point to evidence supporting their opposition, *see* ROA. 1023-1032.

The district court granted summary judgment to the City on causation. ROA.1043-1052. For the use-of-force claim, the district court explained that Appellants' expert limited the cause of the injury to a "hard knee to a prone individual," but Appellants never "provided any evidence to show that Officer Daniel placed his knee on Harris' neck." ROA.1049-1050. On the denial-of-medical-care theory, the district court explained that Appellants "ignored" their burden to show causation and "provided no evidence to show that Harris would have or could have survived with more or different medical care[.]" ROA.1050-1051. The district court then entered final judgment for the City dismissing Appellants' claims with prejudice. ROA.1053.

## S<small>TANDARD OF</small> R<small>EVIEW</small>

This Court reviews summary judgments *de novo* applying the same standards as the district court. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (internal quotation marks and citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134, 134 (5th Cir. 2010) (citation omitted). "All facts and inferences must be drawn in the light most favorable to the party opposing the motion," but "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (cleaned up).

10

### SUMMARY OF THE ARGUMENT

The district court held that Appellants could not show that Officer Daniel caused David Harris' death on any of Appellants' state-law theories. The district court should be affirmed for these reasons:

1.    **Use of Force (Part I)**: Appellants' medical expert testified that only a "hard knee to the neck" could have caused Harris' death. The uncontroverted evidence, including Officer Daniel's sworn declaration and the body camera footage, establish that Officer Daniel did not use force on Harris' neck in the manner described by Appellants' medical expert. While Appellants argue that this Court should infer that Officer Daniel injured Harris during portions of the video where Harris' head and neck are not visible, nothing in the record casts doubt on Officer Daniel's account. And while Appellants speculate that some other use of force might have caused Harris' death, Appellants' expert foreclosed any other possibilities. There is no issue of fact over whether any use of force by Officer Daniel caused Harris' death

2.    **Failure to Provide Medical Care (Part II):** Appellants claim that Officer Daniel caused Harris' death by transporting him to Ouachita Correctional Center rather than admitting Harris to the

hospital. Appellants, however, did not introduce medical evidence to support their contention that any delay in medical care could have or would have changed the outcome. Because Appellants were required to produce expert medical evidence to establish causation, Appellants failed to raise a genuine issue of material fact.

## ARGUMENT

The only claims against the City of Monroe are Appellants' state-law claims under La. C.C. arts. 2315.1 (survival action) and 2315.2 (wrongful death action)[3] based on Officer Daniel's use of force and alleged denial of medical care. *Appellants' Br.*, p. 10; ROA.413, 1053. To prevail on those state-law claims, Appellants were required to prove "fault, causation, and damages." *Dabog v. Deris*, 625 So. 2d 492, 493 (La. 1993) (citing *Morris v. Orleans Par. Sch. Bd.*, 553 So.2d 427, 429 (La. 1989)). For negligence claims, courts apply Louisiana's "duty-risk" analysis to determine liability. *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 758 (5th Cir. 2023). If the plaintiff fails to satisfy any element of the duty-

---

[3] The survival action "permits recovery . . . for the damages suffered by the victim from the time of injury to the moment of death," while the wrongful death action "compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter." *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993).

risk analysis, the defendant is not liable. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008).

The district court concluded that Appellants failed to meet the cause-in-fact element of the duty-risk analysis. ROA.1049-1051. To determine whether a defendant's actions are the cause-in-fact of a plaintiff's injury, courts apply a "but for" test.[4] *Westchester Fire Ins. Co. v. Haspel–Kansas Inv. P'ship*, 342 F.3d 416, 419–421 (5th Cir. 2003). Under that test, courts ask whether "the plaintiff probably would not have sustained the injury but for the defendant's substandard conduct." *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La.1991) (internal citations omitted). The plaintiff bears the burden of proving a "causal relationship" between the tortious act and the alleged injuries. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757, 759.

---

[4] There is another way to prove cause-in fact under Louisiana law. When there are multiple potential causes of an injury, the "substantial factor" analysis asks whether the "defendant's conduct was a 'substantial factor' in bringing about the plaintiff's harm." *Roberts*, 605 So.2d at 1042 (citations omitted); *see also Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01), 782 So. 2d 606, 612 (describing substantial factor test). That test is not at issue here, because while Appellants' expert generally stated that there were "other possibilities" for the injury, the expert only identified a singular mechanism – a hard knee to the neck. ROA.903.

In this case, Appellants were required to raise an issue of fact over whether Officer Daniel caused the injury that led to Harris' death.[5]

Appellants have not met their burden. Appellants' expert identified "a hard knee to the back of the neck" as the injury-causing mechanism that led to Harris' death, but Officer Daniel testified that he never placed his knee on the back of Harris' neck and nothing in the body camera footage shows Officer Daniel striking Harris' neck. ROA.852, 856, 899-905. Appellants also presented no evidence to support their claim that Officer Daniel's decision to transport Harris to Ouachita Correctional Center caused or contributed to Harris' death. This Court should affirm.

## I.   OFFICER DANIEL DID NOT USE ANY FORCE THAT CAUSED HARRIS' DEATH.

According to Appellants' expert, Harris died because of a spinal cord injury caused by a "hard knee to the back of the neck." ROA.895-899. The district court concluded that Appellants did not provide "any evidence to show that Officer Daniel placed his knee on Harris' neck" and "failed to show that Officer Daniel's alleged excessive force caused Harris' death." ROA.1050. Appellants dispute that conclusion here, arguing that Harris'

---

[5] The City does not dispute that Officer Daniel was a City employee acting in the course and scope of his employment. *See* La. C.C. art. 2320 (imposing vicarious liability on employers for damages caused by employees).

head and neck are "out of the camera's view" for roughly five minutes, the video evidence does not "blatantly contradict" Appellants' version, and that some other use of force may have caused Harris' death. *Appellant's Br.,* pp. 18-23. But Appellants' speculation about what might have occurred off camera is insufficient to overcome Officer Daniel's testimony that he never placed his knee on Harris' neck, and Appellants' expert ruled out any other uses of force as a possible cause. There is no issue of material fact.

### A. OFFICER DANIEL DID NOT INJURE HARRIS' NECK.

Appellants first argue that, because Harris' head and neck are off screen during portions of the interaction, Officer Daniel could have caused Harris' death during that time. *Appellants Br.*, pp. 18-20. Officer Daniel, however, testified that he "never placed his knee on the back of David Harris' neck, never drop-kicked or punched Harris' neck, and never placed any significant force on the back of Harris' neck." ROA.852. The body camera footage does not show Officer Daniel dropping onto Harris' neck or using force on Harris' neck in the manner described by Appellants' expert. Although there were several third-party witnesses on the scene, there is no testimony (either by fact witnesses or medical

experts) that Officer Daniel struck the back of Harris' neck in an injury-causing manner. And while there are some portions of the video where Harris' head and neck are off screen, during those portions Officer Daniel is positioned *in front* of Harris securing his hands. [Ex. C-2, 05:15-09:59]. Thus, there is nothing in the record contradicting Officer Daniel's testimony that he did not inflict any injury to Harris' neck, let alone any fatal injury.

## B. "GAPS" IN THE VIDEO FOOTAGE DO NOT CREATE AN ISSUE OF FACT.

Appellants argue that they are entitled to an "inverse" inference that any gaps in the video footage would "prove that Harris would not have died but for" Officer Daniel's conduct. *Appellants Br.*, pp. 21-23. True, this Court is required to draw all reasonable inferences in favor of the non-movant. *Martinez v. City of Rosenberg*, 123 F.4th 285, 289-90 (5th Cir. 2024). But when there is video evidence, courts are required to view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–381 (2007). Where video exists, a court may credit a non-movant's account "if it is supported by sufficient evidence." *Aguirre v. City of San Antonio*, 995 F.3d 395, 410–11 (5th Cir. 2021). And to the extent the video footage is ambiguous or unhelpful, courts may look at other

admissible evidence, such as sworn testimony, to determine whether
there is a factual dispute. *See Bourne v. Gunnels*, 921 F.3d 484, 492–93
(5th Cir. 2019) (issue of fact existed where plaintiff provided sworn
testimony supporting his account about what occurred outside the
camera's view). Appellants are not entitled to an inference that Officer
Daniel caused Harris' death.

### 1. OFFICER DANIEL'S ACCOUNT AND THE FOOTAGE ALIGN.

Appellants cannot rely on an unsupported inference where the
video evidence and sworn testimony align. The City came forward with
specific evidence that Officer Daniel did not injure Harris' neck, including
in the manner Appellants' expert described. ROA.852. The video footage
confirms that, at least during the times that Harris' head and neck are
off camera, Officer Daniel is positioned in front of Harris – not behind
Harris or in position to use "significant force" on Harris' neck or spine.
[C-2, 05:15-09:59]. Again, although there were numerous fact witnesses
on the scene, Appellants introduced no evidence to support their theory
that Officer Daniel used force on Harris' neck. *See Bourne*, 921 F.3d at
492 (considering sworn and unsworn testimony in support of non-

movant's account). That direct evidence overcomes any unsupported inference that Appellants might rely on to defeat summary judgment.

Appellants do not dispute any of those facts. Appellants do not point to any specific portion of the footage that calls Officer Daniel's account into question (for example, by identifying a portion of the video footage where it was possible that Officer Daniel used significant force on Harris' neck). In fact, Appellants base most of their arguments on the district court's analysis of whether *other* officers on the scene could have caused the injury. *Appellants' Br.*, pp. 18-19. And while Appellants weakly claim there is no "objective evidence" to support Officer Daniel's account, *Appellants' Br.*, p. 22, Appellants do not seriously grapple with Officer Daniel's sworn testimony.

Under Appellants' construction, anytime there is a gap in video footage, *no* amount of uncontradicted evidence could suffice to meet a defendant's summary judgment burden. But nothing in *Scott* or this Court's cases relieves Appellants from having to point to specific evidence to meet their summary judgment burden. And here, Appellants do not explain how any purported "gap" in the video footage leads to the inexorable conclusion that Officer Daniel caused the injury. Because the

video evidence and Officer Daniel's testimony are consistent, there is no basis to credit Appellants' speculation that Officer Daniel caused Harris' fatal injury.

### 2. SPECULATION ABOUT WHEN HARRIS' NECK WAS INJURED DOES NOT CREATE AN ISSUE OF FACT.

Appellants also speculate about the timing of the alleged injury to create an issue of fact. Because Appellants cannot identify any act in the footage that supports their expert's theory, Appellants posit that the injury must have been caused in the "crucial time frame" when Harris' head and neck were off camera. *Appellants' Br.*, p. 22. That, however, does not establish that Officer Daniel caused the injury during that period.[6]

There is no evidence – and Appellants point to none – establishing that Officer Daniel used or could have used force in the manner described by Appellants' expert during the alleged "crucial time frame." Without that evidence, Appellants cannot show that Officer Daniel's actions were

---

[6] That matters, because to recover against the City of Monroe, Appellants must establish that Officer Daniel – not Officer Moore, Officer McCall, or someone or something else – caused Harris' injury. *See Henry v. Taco Tio, Inc.*, 606 So. 2d 1376, 1381 (La. Ct. App. 1992) (requiring an employment relationship to establish vicarious liability).

a "but for" cause of Harris' injury or death. Speculation about when the injury occurred cannot create an issue of fact.

## C. NO OTHER USES OF FORCE INJURED HARRIS' NECK.

Appellants also appear to argue that other possible uses of force could have caused Harris' death. *Appellants' Br.*, p. 21 (arguing that the video shows "Daniel consistently grabbing Harris by the neck"). But Appellants' expert, Dr. Anderson, made clear that the cause of death was an "injury to the upper spinal cord" caused by a knee dropped with significant force onto the back of the neck. ROA.895, 899-900. Dr. Anderson excluded Harris being "pushed in the neck or hit in the neck" as causes of the injury. ROA.900. He also excluded "grabb[ing Harris] by the neck to restrain him" as a possible cause of the fatal injury. ROA.900. Simply "compressing" the neck would have been insufficient to cause the injury. ROA.899. "Incidental banging" on the neck also would not have caused damage to the spinal cord. ROA.904. And because the damage was "relatively confined," Dr. Anderson was insistent that a knee – rather than some other body part – must have been the source of the injury. ROA.904.

Appellants' own expert narrowed the injury-causing mechanism to a specific act. Appellants did not provide any other admissible evidence to establish that some other use of force caused or could have caused Harris' death. Under those circumstances, Appellants' speculation that some other use of force might have caused Harris' death cannot create an issue of fact.

### D. APPELLANTS' CASES ARE IRRELEVANT.

Finally, none of the cases Appellants rely on support their arguments. In *Benavides v. Nunez*, this Court held that it lacked jurisdiction to second-guess a district court's determination that genuine issues of fact existed for purposes of summary judgment; it did not, as Appellants claim, hold that gaps in video footage require denying summary judgment. 144 F.4th 751 (5th Cir. 2025). And while Appellants cite *Ramirez v. Guadarrama*, for the proposition that self-serving affidavits cannot be used to defeat summary judgment, that case involved neither affidavits nor summary judgment; the case involved qualified immunity on a motion to dismiss. 3 F.4th 129 (5th Cir. 2021). Appellants do not point to any cases which hold that an unsupported inference can overcome summary judgment where video footage and testimony align.

## II. OFFICER DANIEL'S DECISION TO TRANSPORT HARRIS TO OUACHITA CORRECTIONAL CENTER DID NOT CAUSE HARRIS' DEATH.

Appellants also claim that Officer Daniel failed to provide Harris with medical care. Appellants argue that Officer Daniel "could have prevented [Harris] death" if Officer Daniel had left Harris at Ochsner rather than transporting Harris to Ouachita Correctional Center. *Appellants Br.*, pp. 22-23. Once again, to prevail on that theory, Appellants were required to show that any delay in medical care was a cause-in-fact of Harris' death.[7]

Appellants' theory is based on their conclusion that Harris might have survived with immediate medical treatment. Louisiana courts, however, generally require expert medical testimony "when the conclusion regarding medical causation is one that is not within common knowledge." *Jenkins v. Arbors on Lake Apartments*, 2021-01662 (La. 3/22/22), 334 So. 3d 746, 749 (citation omitted). Complex determinations about whether Harris would have, or could have, survived with a particular course of treatment are not within the common knowledge of

---

[7] Louisiana law does not recognize a claim for lost chance of survival outside the medical malpractice context. *Niang v. Dryades YMCA Sch. of Com., Inc.*, 2019-0425 (La. App. 4 Cir. 12/4/19), 286 So. 3d 506, 512–13.

laypersons. *See Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1234 (the "causal connection between a patient's death and an unreasonable delay" in diagnosis and treatment are "simply beyond the province of lay persons to assess"). As the district court explained, however, Appellants "ignored" their burden and introduced no evidence – medical, lay, or otherwise – to support their conclusion. ROA.1050-1051.

Courts have dismissed cases for failure to prove medical causation under similar circumstances. For example, in *Scott v. City of Shreveport*, the court held that the plaintiffs failed to "establish a causal link between the officer's actions and [the suspect's] heart attack" where they did not introduce any medical evidence to show that the officer's tasing caused the heart attack. 169 So. 3d 770, 772–773 (La. App. 2 Cir. 2015); *see also Arshad v. Congemi*, 164 So. 3d 193 (La. App. 5 Cir. 2014) (insufficient evidence that physical nature of arrest or failure to monitor caused death); *Brown v. Lee*, 639 So. 2d 897, 899 (La. App. 5 Cir. 1994) (speculation insufficient absent proof of medical need); *Giammanchere v. Ernst*, 742 So. 2d 572, 576 (La. App. 4 Cir. 1999) (reversing wrongful death damages where plaintiff failed to prove that delay in medical care

caused death). So too here. Appellants have not introduced any evidence to support their theory that a delay in providing or failure to render immediate medical care caused Harris' death.

Appellants failed to establish an essential element of their failure-to-provide-medical-care claim. Appellants' speculation about the possible outcome if Officer Daniel had made a different decision is insufficient to create an issue of fact. This Court should affirm the district court's dismissal of Appellants' claim based on Officer Daniel's alleged failure to provide medical care.

## III. IF THIS COURT REVERSES, THIS COURT SHOULD REMAND WITH INSTRUCTIONS TO ADDRESS THE CITY'S ALTERNATIVE ARGUMENTS FOR SUMMARY JUDGMENT.

The City advanced several alternative arguments for summary judgment, but the district court only considered and granted summary judgment on one of those alternative grounds. Although this Court can affirm summary judgment on any ground contained in the record, some of the City's alternative grounds are "fact intensive" and based on "heretofore unexplored grounds." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 322–23 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1428 (2025). If this Court reverses on causation, it should remand to the district court

with instructions to consider the City's alternative grounds for summary

judgment.

## CONCLUSION

The City of Monroe respectfully requests that the district court be

affirmed.

CITY OF MONROE, LEGAL DEPARTMENT
400 Lea Joyner Memorial Expressway
Monroe, Louisiana 71201
Tel: (318) 329-2240
Fax: (318) 329-3427
Brandon.Creekbaum@ci.monroe.la.us

By: */s/ Brandon W. Creekbaum*
        Brandon W. Creekbaum, No.33791
        *Attorney for the City of Monroe*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on September 23, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

CITY OF MONROE, LEGAL DEPARTMENT
400 Lea Joyner Memorial Expressway
Monroe, Louisiana 71201
Tel: (318) 329-2240
Fax: (318) 329-3427
Brandon.Creekbaum@ci.monroe.la.us

By: */s/ Brandon W. Creekbaum*
    Brandon W. Creekbaum, No.33791
    *Attorney for the City of Monroe*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,720 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

CITY OF MONROE, LEGAL DEPARTMENT
400 Lea Joyner Memorial Expressway
Monroe, Louisiana 71201
Tel: (318) 329-2240
Fax: (318) 329-3427
Brandon.Creekbaum@ci.monroe.la.us

By: */s/ Brandon W. Creekbaum*
      Brandon W. Creekbaum, No.33791
      *Attorney for the City of Monroe*

27